# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

|  | Case No. 13-CV-03028-VEB |
|---|---|
| SONIA MARTINEZ, on behalf of AMT, a Minor Child, | |
| Plaintiff, | DECISION AND ORDER |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

# I. INTRODUCTION

In September of 2008, Plaintiff Sonia Martinez, the mother and natural guardian of AMT ("Claimant"), filed an application on Claimant's behalf for

DECISION AND ORDER RE: *MARTINEZ V. COLVIN,* 13-CV-3028 (VEB)

Supplemental Security Income ("SSI") benefits under the Social Security Act. The Commissioner of Social Security denied the application.

Plaintiff, represented by D. James Tree, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties have consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

On May 26, 2015, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 37).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff is the mother of Claimant, a minor child. On September 12, 2008, Plaintiff filed an application for SSI benefits on Claimant's behalf, alleging disability beginning September 1, 2008. (T at 129-31).[1] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On April 20, 2011, a hearing was held before ALJ James W. Sherry. (T at 32-67). Plaintiff and Claimant appeared with an attorney and both testified. (T at

---

[1] Citations to ("T") refer to the administrative record at Docket Nos. 24-26.

DECISION AND ORDER RE: *MARTINEZ V. COLVIN,* 13-CV-3028 (VEB)

51-56, 58-66). The ALJ also received testimony from Dr. James Browder, a medical expert. (T at 39-50).

On July 14, 2011, ALJ Sherry issued a written decision denying the application for benefits and finding that Claimant was not disabled within the meaning of the Social Security Act.  (T at 7-25).   The ALJ's decision became the Commissioner's final decision on December 21, 2012, when the Social Security Appeals Council denied Plaintiff's request for review.  (T at 1-6).

On February 20, 2013, Plaintiff, acting by and through her attorney, commenced this action on Claimant's behalf by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5).   The Commissioner moved for a remand pursuant to sentence six of 42 U.S.C. § 405 (g). (Docket No. 11).  The motion was granted on June 14, 2013. (Docket No. 12).

A further administrative hearing was held on March 24, 2014, before ALJ Wayne N. Araki.  Plaintiff and Claimant again appeared with their attorney and testified.  (T at 429-43, 444-49, 449-52). The ALJ also received testimony from Kimberly Mullinax, a vocational expert. (T at 452-58).

On April 25, 2014, ALJ Araki issued a written decision finding that Plaintiff was not entitled to benefits under either the childhood analysis or adult analysis. (T at 397-424).  ALJ Araki's decision is now the Commissioner's final decision.

DECISION AND ORDER RE: *MARTINEZ V. COLVIN,* 13-CV-3028 (VEB)

The case was reopened on August 8, 2014. (Docket No. 19).  The Commissioner filed an Answer on December 5, 2014. (Docket No. 23).  Plaintiff moved for summary judgment on March 16, 2015. (Docket No. 29). The Commissioner filed a motion for summary judgment on May 12, 2015. (Docket No. 35).  Plaintiff filed a Reply on May 26, 2015. (Docket No. 39).

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for further proceedings.

## III. DISCUSSION

### A.    Sequential Evaluation Process

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of

disability. 20 C.F.R. § 416.924; *see generally Meredith v. Astrue*, No. CV-09-0384, 2011 U.S. Dist. LEXIS 37363, at \*3 (E.D.Wa. April 5, 2011).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C .F.R. § 416.924(b). If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires an examination as to whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). Id. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d). If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1).

DECISION AND ORDER RE: *MARTINEZ V. COLVIN,* 13-CV-3028 (VEB)

Analysis of functionality is informed by consideration of how a claimant functions in six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Meredith*, 2011 LEXIS 37363, at *4. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Meredith*, 2011 LEXIS 37363, at *4. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Meredith*, 2011 LEXIS 37363, at *4. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as

DECISION AND ORDER RE: *MARTINEZ V. COLVIN,* 13-CV-3028 (VEB)

long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## B.    Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a

whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.    Commissioner's Decision[2]

The ALJ noted that Claimant was born on January 29, 1996, and, as such, was an adolescent on September 12, 2008 (the date the application was filed) and attained the age of 18 on January 18, 2014 (prior to the ALJ's decision on remand).

---

[2] The discussion herein refers to ALJ Araki's decision after remand, dated April 25, 2014, which is now the Commissioner's final decision.

DECISION AND ORDER RE: *MARTINEZ V. COLVIN,* 13-CV-3028 (VEB)

(T at 405).  At step one of the sequential evaluation, the ALJ found that Claimant had not engaged in substantial gainful activity since the application date. (T at 405).

At step two, the ALJ determined that prior to the age of 18, Claimant had the following impairments considered "severe" under the Act: Henoch-Schonlein purpura and seizure disorder. (Tr. 405).

However, at step three, the ALJ concluded that, prior to the age of 18, Claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 406).  The ALJ also found that Claimant did not have an impairment or combination of impairments that functionally equaled the Listings. (T at 406).  In particular, the ALJ determined that Claimant had less than a marked limitation in acquiring and using information, less than a marked limitation in attending and completing tasks, less than a marked limitation with respect to interacting and relating with others, less than a marked limitation as to moving about and manipulating objects, less than a marked limitation with regard to the ability to care for herself, and less than a marked limitation in health and physical well-being. (T at 411-15).

As such, the ALJ concluded that Claimant had not been disabled prior to attaining age 18. (T at 416).  He also found that Claimant had not developed any new impairments since turning 18, although she continued to have the same severe impairments. (T at 416).  The ALJ determined that after turning 18, Claimant did not

have an impairment or combination of impairments that met or medically equaled a Listed impairment. (T at 416). The ALJ found that, since attaining age 18, Claimant retained the residual functional capacity to perform sedentary work, except that she could stand/walk/sit for 2 hour intervals, could not climb ladders, ropes, or scaffolds, could occasionally climb stairs, kneel or crawl; and had some limitation with regard to understanding, remembering, and carrying out instructions. (T at 416).

Considering Claimant's age (18), education (limited), work experience (no past relevant work), and RFC, the ALJ found that there were jobs that exist in significant numbers that Claimant could have performed since turning 18. (T at 417).

As such, the ALJ concluded that Claimant had not been disabled, as defined under the Act, from January 28, 2014 (the date she turned 18), through April 25, 2014 (the date of the ALJ's decision) and was therefore not entitled to benefits. (T. 418-19).

## D.   Plaintiff's Arguments

Plaintiff argues that the Commissioner's decision should be reversed. She offers four (4) main arguments. First, Plaintiff argues that the ALJ's step two analysis was flawed. Second, Plaintiff challenges the ALJ's credibility determination. Third, she contends that the ALJ erred in his Listings analysis. Lastly, Plaintiff argues that the ALJ's step five determination should be reversed. This Court will address each argument in turn.

DECISION AND ORDER RE: *MARTINEZ V. COLVIN,* 13-CV-3028 (VEB)

## IV. ANALYSIS

### A.    Step Two Analysis

In June of 2011, Claimant was seen for an intake evaluation at Comprehensive Mental Health.  She was diagnosed with anxiety disorder NOS and referred for treatment.  However, Claimant attended one follow-up session, but otherwise failed to seek treatment. (T at 460).  In January of 2014, Claimant was evaluated at Comprehensive Mental Health following a December 2013 suicide attempt. (T at 460-68).  She was diagnosed with "moderate depression," although the examiner believed Claimant was "likely minimizing her symptoms." (T at 462).  During 2013 and 2014, Dr. John Lyzanchuk, Claimant's treating physician, made numerous notes of anxiety and panic attacks. (T at 484, 488, 491, 501).

Claimant testified that she has severe anxiety attacks and often sleeps "all day" and "always feel[s] depressed." (T at 445).  Plaintiff testified that Claimant experiences symptoms of fatigue and anxiety. (T at 52-55).  Dr. James Browder, the medical expert who testified at the first administrative hearing, opined that "a psychological evaluation would be appropriate." (T at 50).

In his decision, the ALJ noted that Claimant had "some mental problems." (T at 405).  However, the ALJ found that Claimant did not have a severe mental health impairment. (T at 405).  In particular, the ALJ noted "significant gaps" in Claimant's mental health treatment and referenced Claimant's testimony that she used

DECISION AND ORDER RE: *MARTINEZ V. COLVIN,* 13-CV-3028 (VEB)

medication to address her symptoms "as necessary" and that it was effective when used.  The ALJ thus concluded that Claimant's mental health conditions did not cause more than mild limitation in her activities of daily living, social functioning, or concentration/persistence/pace. (T at 405).

This Court finds that the ALJ did not adequately develop the record.  There is no question that "the ALJ has a duty to assist in developing the record." *Armstrong v. Commissioner of Soc. Sec. Admin*., 160 F.3d 587, 589 (9th Cir. 1998); 20 C.F.R. §§ 404.1512(d)-(f); *see also Sims v. Apfel*, 530 U.S. 103, 110-11, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . .").  One of the tools the ALJ has to develop the record is the ability to order a consultative examination, *i.e.*, "a physical or mental examination or test purchased for [a claimant] at [the Commissioner's] request and expense." 20 C.F.R. §§ 404.1519, 416.919.

To the extent the ALJ found there was an evidentiary gap arising from the lack of consistent mental health treatment, the appropriate response in this particular case was to order a consultative examination.  Although the ALJ may consider the lack of treatment when considering the severity of the claimant's impairments, the ALJ should also consider alternative explanations for the lack of treatment.  For example, "financial concerns [might] prevent the claimant from seeking treatment

DECISION AND ORDER RE: *MARTINEZ V. COLVIN,* 13-CV-3028 (VEB)

[or] . . . . the claimant [may] structure[] his daily activities so as to minimize symptoms to a tolerable level or eliminate them entirely." *Id.*  Further, as a general matter, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996)(quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

Here, although Claimant did not seek consistent mental health treatment, the record includes a suicide attempt, several diagnoses of mental health conditions, including an indication that Claimant was likely minimizing her symptoms, and reports from Claimant's treating doctor and mother that she experienced serious and sustained symptoms of anxiety and depression.  Moreover, as noted above, the medical expert called to testify by the Commissioner felt a psychological evaluation was appropriate.  Under the circumstances, the ALJ erred by relying so heavily on the lack of medical treatment.

Moreover, the ALJ erred by placing significant emphasis on a brief exchange with Claimant regarding the severity of her symptoms. Claimant testified that she took her anxiety medication "Just when I need it" and reported that it seemed to help. (T at 436-37).  However, Claimant also testified that she had a severe anxiety attack the day before the hearing. (T at 444).  In addition, as noted above, Claimant was diagnosed with mental illness by her treating physician and counselors at

Comprehensive Mental Health, with the latter noting that Claimant was "likely minimizing her symptoms." (T at 462).  The ALJ also minimized Claimant's symptoms by citing forms completed by Claimant's teachers with regard to her social functioning in school. (T at 405).  However, those forms were completed in 2009 (when Claimant was in seventh grade), long before the 2013 suicide attempt and 2013/14 notations and diagnoses by Dr. Lyzanchuk and the evaluators at Comprehensive Mental Health.

For the foregoing reasons, this Court finds that the ALJ failed to adequately consider the evidence with regard to Claimant's mental health impairments and should have developed the record further by ordering a consultative psychiatric examination.

## B.    Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible

and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. § 404.1529(b), 416.929; SSR 96-7p.

In addition, "[t]estimony by a lay witness provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness." *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

In this case, Claimant suffers from Henonch-Schonlien purpura, a disorder that causes a rash, inflammation, and bleeding in the skin, joints, intestines, and kidneys.  Claimant testified that she had debilitating pain resulting from this condition, which (during flare-ups) inhibited her ability to walk and caused her to need assistance showering. (T at 441-42).  Plaintiff testified that Claimant has leg pain at night or when it is going to rain, which causes difficulty sleeping. (T at 451-52).

The ALJ found that Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements

DECISION AND ORDER RE: *MARTINEZ V. COLVIN,* 13-CV-3028 (VEB)

concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent alleged. (T at 407). With regard to Henonch-Schonlien purpura, the ALJ concluded that the condition was subject to "flare-ups" that were "generally intermittent and responsive to prednisone." (T at 407). The ALJ also noted that clinical findings with regard to Claimant's legs generally showed full range of motion, normal gait, and full muscle strength. (T at 409). As such, the ALJ discounted the testimony of Claimant and Plaintiff and concluded that Claimant would stand/walk for at least 2 hours in an 8-hour workday. (T at 409).

This Court finds that the ALJ's decision in this regard is supported by legally sufficient evidence. The ALJ engaged in a detailed discussion of the treatment history, which documented consistent complaints, but only occasional serious flare-ups, which were responsive to treatment. The last flare-up requiring a prednisone treatment occurred in September of 2010 (subsequent flare-ups were treated with Aleve and a heating pad). (T at 408-09). Throughout much of 2013, the treatment notes of Claimant's physicians document complaints related to her seizure disorder, rather than Henonch-Schonlien purpura symptoms. (T at 408-09). Although Claimant obtained a "Section 504" accommodation plan that exempted her from physical education and climbing stairs during her school years, the ALJ incorporated a stair-climbing limitation in the RFC determination and concluded that Claimant's

DECISION AND ORDER RE: *MARTINEZ V. COLVIN,* 13-CV-3028 (VEB)

ability to stand, walk, or sit was limited to 2 hours in an 8-hour workday. (T at 416). This Court finds no reversible error with regard to this aspect of the ALJ's decision.

Plaintiff and Claimant both also testified as to debilitating seizures, which began in November of 2012. The ALJ discounted this testified. In particular, the ALJ noted that, other than June of 2013 (when Claimant had six seizures in a month), the seizure activity appeared to "occur only intermittently." (T at 416). In addition, the ALJ noted that while anti-seizure medications were initially ineffective and resulted in side effects, Claimant's current medication appeared to be working without significant side effects. (T at 417). The ALJ also pointed to a treatment note indicating that Claimant had (on one occasion) not been fully compliant with her seizure medications. (T at 417). The ALJ believed that he had adequately accounted for Claimant's seizure episodes by limiting her to no climbing of ramps, ladders, or scaffolds and no involvement with heights or moving machinery. (T at 417).

The ALJ should have developed the record by obtaining a consultative examination to consider the limiting effects of Claimant's seizure disorder. Although the record contained a physical consultative examination (T at 305-08), it was performed in December of 2008, well before the emergence of Claimant's seizures and epilepsy diagnosis. The record does not contain any assessment from a treating or examining physician regarding the nature and extent of the limitations imposed upon Claimant by this condition. Moreover, the record was not consistent

DECISION AND ORDER RE: *MARTINEZ V. COLVIN,* 13-CV-3028 (VEB)

with the ALJ's conclusion that Claimant's seizures were intermittent and well-controlled.  In July of 2013, Dr. Slopp, Claimant's treating neurologist noted that Claimant had 10 seizures within the prior 8 months. (T at 469).  Although Claimant testified that new medication seemed to be controlling her seizures, she also said she had "barely started" the medication. (T at 433-35).  Moreover, Plaintiff testified that, as of March 2014, Claimant had already had 4 seizures that year. (T at 451).  The ALJ discounted significant seizure activity in June of 2013 on the assumption that this spike was "likely" caused by non-compliance with her medication. (T at 410).  However, no medical provider made this connection.  Accordingly, a physical consultative examination is needed on remand.

Lastly, as noted above, the ALJ improperly discounted Claimant's testimony of disabling mental health impairments by placing undue weight on the lack of consistent treatment and by failing to order a consultative psychiatric evaluation.

Accordingly, the ALJ's credibility analysis with regard to Claimant's seizures and mental health limitations cannot be sustained and should be revisited on remand after further development of the record.

## C.    Listings Analysis

Plaintiff also challenges the ALJ's Listings analysis, arguing that Claimant's epilepsy meets Listings §111.02 and/or 11.02 and that her impairments functionally equal a Listing.  For the reasons outlined above, this Court finds that the ALJ's

DECISION AND ORDER RE: *MARTINEZ V. COLVIN,* 13-CV-3028 (VEB)

Listings analysis cannot be sustained due to his failure to adequately develop the record concerning Claimant's seizure disorder.  The analysis should be revisited on remand after the consultative examinations.

### D.    Step Five

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot return to his previous job, the Commissioner must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform. See *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Gamer v. Secretary of Health and Human Servs*., 815 F.2d 1275, 1279 (9th Cir.1987).  "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Here, the ALJ's step five analysis was based on the testimony of Kimberly Mullinax, a vocational expert.  (T at 418).  However, the hypothetical questions presented to the vocational expert by the ALJ assumed a claimant able to perform work consistent with the ALJ's RFC determination. (T at 453-54).  For the reasons outlined above, the ALJ did not adequately develop the record concerning Claimant's mental health impairments and seizure disorder.  As such, the RFC determination and the hypothetical questions based thereon cannot be sustained and must likewise be revisited on remand.

**E.    Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

In this case, this Court finds that a remand for further proceedings is warranted.  This Court is mindful that this matter has been pending for some time.  However, this Court is not persuaded that the record is "clear" that Claimant is disabled.  In fact, as outlined above, the record is materially underdeveloped with respect to Claimant's mental health impairment and seizure disorder, which (upon

further development) may or may not impose work-related limitations beyond those identified in the ALJ's RFC determination.  The existing evidentiary record is insufficient to yield an answer.  As such, a remand for further proceedings is the appropriate remedy.

# V. ORDERS

**IT IS THEREFORE ORDERED** that**:**

Plaintiff's motion for summary judgment, **ECF No.  29**, is **granted.**

Defendant's motion for summary judgment, **ECF No. 35**, is **denied**.

Plaintiff's counsel may file an application for attorneys' fees.

This case is remanded for further proceedings.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of Plaintiff and **CLOSE** the file.

DATED this 3rd day of August, 2015

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE